IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

PORTIA DANIELS, on behalf of herself
and all others similarly situated,

    Plaintiff,

  v.

AÉROPOSTALE WEST, INC., a Delaware
corporation, AÉROPOSTALE, INC., a
Delaware corporation, and DOES 1 through
10, inclusive,

    Defendants.

No. C 12-05755 WHA

**ORDER GRANTING CONDITIONAL CERTIFICATION OF FLSA COLLECTIVE ACTION**

## INTRODUCTION

In this failure-to-pay-overtime action, plaintiff moves for conditional certification of a collective action under the FLSA. To the extent stated below, plaintiff's motion is **GRANTED**.

## STATEMENT

Plaintiff Portia Daniels was employed for four years by defendant Aéropostale West, Inc., as a non-exempt store manager (Compl. ¶ 13). Defendants are a nationwide, shopping mall-based specialty retailer of casual apparel and accessories (*id.* at ¶ 15). Within the last three years of plaintiff's employment, she allegedly consistently worked in excess of forty hours per week without getting paid the appropriate overtime compensation under the FLSA, and she received several non-discretionary bonuses that were not included in her regular rate of pay when she worked overtime (*id.* at ¶ 14). Defendants use a uniform payroll system for all of their

1  employees nationwide that calculates the employees' rate of pay, hours worked, and earnings
2  paid (Br. 4). Plaintiff alleges that defendants had a uniform, nationwide practice of failing to
3  include earned bonus amounts into non-exempt store employees' regular rate of pay for overtime
4  purposes, which violated the FLSA (*id.* at 2).

5  In March 2011, defendants' employees in California commenced a civil action in the
6  Los Angeles Superior Court asserting California wage-and-hour claims *(La Tina Sankey v.*
7  *Aéropostale, Inc.*, No. BC457468) (*id.* at 2, 6). There, Plaintiff La Tina Sankey included a claim
8  for failure to include bonus payments in the regular rate of pay for overtime hours California
9  management employees worked during the time period between March 2007 to the present
10 (Schumacher Decl. ¶ 2). Plaintiff's counsel there are counsel here, too (*id.* at ¶¶ 2–3). One year
11 after commencing *Sankey*, defendants sent a letter to its employees referencing the *Sankey* action
12 (Dkt. No. 25-1 at 74). The letter stated that defendants had conducted their own investigation
13 and found that overtime was potentially under-calculated at times, for which they were enclosing
14 a check and a detailed spreadsheet for the amount of the adjustment (*ibid.*). The *Sankey* action
15 was certified as a class action in December 2012 (Favarote Decl. ¶ 4).

16 Prior to July 2011, defendants' calculation for overtime payment failed to include
17 non-discretionary bonuses into the regular rate of pay for purposes of calculating overtime
18 and failed to perform the calculations properly, thereby under-calculating the overtime pay
19 of its non-exempt employees (Br. 7). To correct this, defendants instituted a new process for
20 calculating the bonus-related overtime pay (*ibid.*).

21 In November 2012, plaintiff filed the present collective action claim against defendants
22 alleging that defendants violated the FLSA by failing to include non-discretionary bonus
23 amounts into non-exempt store employees' regular rate of pay for overtime purposes (*id.* at 4).
24 A hearing on the present motion was held on April 18, 2013, which was attended by counsel.

**ANALYSIS**

27 Collective actions under the FLSA are governed by 29 U.S.C. 216(b), which provides
28 that one or more employees may bring a collective action "on behalf of himself or themselves

2

and other employees similarly situated." The distinctive feature of a collective action, setting it apart from Rule 23 class actions, is that the members of a collective action must "opt-in" by providing written consent in order to become party plaintiffs. 29 U.S.C. 216(b). The Supreme Court has held that district courts have discretion over FLSA collective actions. *Hoffmann-La Roche v. Sperling*, 493 U.S. 164, 169 (1989). To certify a collective action, plaintiffs bear the burden of showing that the proposed lead plaintiff and the proposed collective action group are "similarly situated." *Leuthold v. Destination Am., Inc.*, 224 F.R.D. 462, 466 (N.D. Cal. Aug. 16, 2004) (Judge Vaughn Walker). Neither the FLSA nor our court of appeals has defined the term "similarly situated."

Here, plaintiff seeks conditional certification of a FLSA collective action because defendants had an alleged uniform and nationwide practice of failing to include bonuses into the regular rate of pay for overtime purposes for non-exempt employees. Pursuant to 29 C.F.R. 778.209(a), this is a violation of the FLSA. After oral argument, however, it became clear that the main issue is not whether defendants completely failed to pay, but whether they failed to pay in a *timely manner*. This order holds that, to the extent stated below, plaintiff's motion for conditional certification is **GRANTED**.

### 1. CONDITIONAL CERTIFICATION: NOTICE STAGE.

To certify a collective action, the majority of courts follow a two-step approach. *Leuthold*, 224 F.R.D. at 466. *First*, they must decide whether the potential class should be given notice of the action. *Id.* at 467. *Second*, they must permit the defendant to move to decertify the class once discovery is complete and the case is ready to be tried. *Ibid*.

Here, plaintiff is at the first step — seeking conditional certification to give notice of the action to potential plaintiffs. In the initial "notice stage," courts determine whether a collective action should be certified for the purpose of sending notice of the action to potential class members. *Gerlach v. Wells Fargo & Co.*, 2006 WL 824652, at *2 (N.D. Cal. Mar. 28, 2006) (Judge Claudia Wilken). This decision is based on the pleadings and affidavits submitted by the parties. *Adams v. Inter-Con Sec. Sys., Inc.*, 242 F.R.D. 530, 536 (N.D. Cal. Apr. 11, 2007) (Judge Marilyn Hall Patel). Due to the limited amount of evidence, courts make this

3

determination under a fairly lenient standard which typically results in conditional class certification. *Ibid*. Courts have held that conditional certification requires only that the plaintiff make substantial allegations that the putative class members were subject to a single illegal policy, plan or decision. *Ibid.* (internal quotations and citations omitted). The plaintiff must show that there is some factual basis beyond the mere averments in her complaint for the class allegations. *Ibid.* (internal quotations and citations omitted).

In the instant action, plaintiff seeks conditional certification of "all current and former employees of Aéropostale classified as non-exempt, who have worked overtime for Aéropostale in the United States or Puerto Rico at any time within the Collective Action Period and received a non-discretionary bonus" (Compl. ¶ 20, Br. 4). The collective action period begins November 9, 2009 — three years prior to the filing of the complaint (*ibid.*). Plaintiff argues that she has made her prima facie case for collective relief by alleging that she falls under the uniform non-exempt job classification of the FLSA collective action members, there was a common payroll system and methodology for calculating overtime, defendants had a common practice to pay performance-related bonuses, the proposed collective action members worked overtime during the period in which the bonuses were earned, and defendants applied a common policy of denying certain overtime pay by not including the non-discretionary bonuses into the proposed collective action members' regular rate of pay (Br. 14).

As evidence, plaintiff points to her declaration in which she states that she did not receive an overtime pay adjustment to reflect the bonuses she earned during her employment with defendants (Daniels Decl. ¶ 4). Plaintiff also includes her earnings statements showing the bonuses she earned and the overtime she worked (Daniels Decl. Exhs. G–J). To prove defendants' uniform policy, plaintiff relies on statements from defendants' director of payroll, Mr. Rawle Boatswain, derived from a deposition conducted for the *Sankey* litigation. Plaintiff argues that defendants use a software program, data, and methodology to calculate the overtime pay of all employees nationwide, and as such, any errors in the calculations or formulas would affect all employees (Br. 17). Moreover, plaintiff provides a letter from defendants dated March 22, 2012, that was sent to employees stating that as a result of the *Sankey* litigation,

4

defendants learned that overtime pay was potentially under-calculated (Dkt. No. 25-1 at 74). Along with the letter, defendants enclosed a check and a detailed spreadsheet for the overtime pay adjustment (*ibid.*). The day before the hearing, plaintiff filed a FLSA consent form signed by a different current or former non-exempt employee of defendants', signed September 14, 2012 (Dkt. No. 35 at 4).

As attachments to Director Boatswain's declaration, defendants provide plaintiff's earnings statements showing that plaintiff was paid an overtime adjustment (Boatswain Decl. Exhs. A at 8, B at 16). However, Director Boatswain does concede that plaintiff did not receive an overtime adjustment for the overtime she worked in May 2011, which he points to have been an "inadvertent mistake" (Boatswain Decl. ¶ 10). At the April 18 hearing, defendants' counsel confirmed that plaintiff, as of now, has not yet received the overtime adjustment due to her for May 2011. Director Boatswain also states in his declaration that since at least November 2009, the nationwide practice has been to pay overtime on bonuses as an overtime adjustment and in 2011, the error of failing to pay overtime on earned bonuses in states in which double time is earned was corrected (Boatswain Decl. ¶¶ 8–9).

Plaintiff has met the fairly lenient standard of providing sufficient evidence to show that there was a uniform, nationwide policy of failing to pay non-exempt employees the appropriate overtime compensation in a timely manner. In other words, potential plaintiffs may have been under-compensated as early as November 2009 but failed to receive their corresponding overtime adjustment until 2011 or later, when defendants discovered the error during the *Sankey* litigation. Accordingly, the motion for conditional certification at the notice stage is **GRANTED**.

**2.   PRODUCTION OF CONTACT INFORMATION.**

The Supreme Court has authorized "the discovery of the names and addresses" of employees to send notices. *Hoffman-La Roche*, 493 U.S. at 170. Other employee information such as alternate addresses, email addresses, social security numbers, telephone numbers, employee numbers, office locations, and job titles have also been permitted for discovery. *See Lewis v. Wells Fargo & Co.*, 669 F. Supp. 2d 1124, 1130 (N.D. Cal. 2009) (Judge Claudia

Wilken); *Hill v. R+L Carriers, Inc.*, 690 F. Supp. 2d 1001, 1010 (N.D. Cal. 2010) (Judge Claudia Wilken).

Plaintiff requests an electronic list of the collective action members along with their last known addresses, telephone numbers, e-mail addresses, dates of employment, location(s) of employment, and employee numbers so that the proposed notice and opt-in form can be sent to them via first-class mail (Br. 21). Defendants are **ORDERED** to release, **WITHIN FIFTEEN DAYS OF THIS ORDER**, the names, last known mailing addresses, dates of employment, location(s) of employment, and employee numbers to plaintiff. Employee e-mail addresses and telephone numbers are unnecessary for first-class mail delivery. Plaintiff shall bear the full cost of the notice and use the contact information solely to send out the notice.

### 3. COLLECTIVE ACTION NOTICE AND OPT-IN FORM.

The Supreme Court has held that employees need to receive "accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Hoffman-La Roche*, 493 U.S. at 170. Moreover, "trial courts must take care to avoid even the appearance of judicial endorsement of the merits of the action" when overseeing the notice-giving process. *Id.* at 174. Plaintiff has provided a copy of her proposed notice, and defendants have provided a redlined version of the proposed notice indicating their amendments. Each proposed amendment by defendants will be addressed in turn.

*First*, defendants argue that the language indicating that the Court has expressed no opinion about the merits of the claims asserted should be placed beneath the title of the case (Opp. 16–17). This order agrees. The statement should be in bold and at the top of the front page below the court caption to make the Court's neutrality clear to potential plaintiffs. *Adams*, 242 F.R.D. at 540.

*Second*, defendants argue that the proposed notice should include language stating that potential plaintiffs may be required to pay certain fees and/or costs pursuant to the prosecution of the collective action (Opp. 17). This order agrees. Information that informs potential

6

plaintiffs that they share in liability should be included to present to potential plaintiffs a fair statement of their rights. *Adams*, 242 F.R.D. at 540 (internal quotations and citations omitted).

*Third*, defendants argue that the proposed notice should include language stating that potential plaintiffs may be required to provide deposition testimony or courtroom testimony (Opp. 17). This order agrees. It is appropriate to include language informing potential plaintiffs of possible obligations in the event they elect to opt-in. *Sanchez v. Sephora USA, Inc.*, 2012 WL 2945753, at *7 (N.D. Cal. July 18, 2012) (Judge Saundra Brown Armstrong); *Luque v. AT&T Corp.*, 2010 WL 4807088, at *7 (N.D. Cal. Nov. 19, 2010) (Judge Charles Breyer).

*Fourth*, as to additional minor edits: (1) on the first page, include defendants' edit adding the word "conditional" in the title so it reads "notice of court conditional certification;" (2) in the "Introduction" section, in the first paragraph, include defendants' edit adding "The Court conditionally certified the Lawsuit to proceed as a 'collective action' on behalf of all non-exempt employees who were employed by Aéropostale West Inc. and/or Aéropostale Inc. in the United States and Puerto Rico from November 9, 2009 to the present;" (3) in the "Introduction" section, in the second paragraph, include defendants' edits deleting "improperly," deleting "(those earning overtime pay)," and deleting "contests all claims that have been asserted and;" (4) in the "Effect of Joining this Lawsuit" section, include all of defendants' edits (as indicated above); (5) in the "If You Choose Not to Join This Lawsuit" section, include defendants' edits adding "if you do not wish to be part of this lawsuit, then do not return the attached 'consent to join' form" in capital letters, and delete the last line "You do not have to complete and mail the 'Consent to Join' form if you do not wish to join this Lawsuit;" and (6) in the "No Retaliation Permitted" section, include defendants' edit changing "anyone" to "Aéropostale West, Inc. or Aéropostale, Inc."

### 4. EVIDENTIARY OBJECTIONS.

Defendants submitted evidentiary objections to plaintiff's declaration (Dkt. No. 29) and to plaintiff's counsel's declaration (Dkt. No. 30). All objections are **OVERRULED** because: (1) this order does not rely on information provided in paragraph three of plaintiff's declaration; (2) the information provided in paragraph four of plaintiff's declaration consists of plaintiff's

7

personal knowledge and belief; (3) the information on class certification in the *Sankey* action provided in paragraph four of plaintiff's counsel's declaration was confirmed at oral argument, and (4) this order relies on the letter sent by Aéropostale, not on the statements provided in paragraph seven of plaintiff's counsel's declaration.

## CONCLUSION

To the extent stated above, plaintiff's motion for conditional certification of a collective action under the FLSA is **GRANTED**. The collective class of potential plaintiffs consists of all current and former employees of Aéropostale classified as non-exempt who have worked overtime for Aéropostale in the United States or Puerto Rico at any time within the last three years — since November 9, 2009 — and received a non-discretionary bonus. Defendants shall release, within fifteen days of this order, the names, last known mailing addresses, telephone numbers, dates of employment, location(s) of employment, and employee numbers to plaintiff. Plaintiff shall incorporate the aforementioned changes into its notice and mail the notice to all potential plaintiffs via first-class mail. Plaintiff shall bear the full cost of the notice. Plaintiff and counsel may use the information solely to send out the notice. If a class member contacts counsel, then counsel may follow up.

**IT IS SO ORDERED.**

Dated: April 24, 2013.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE