Joseph R. Becerra (State Bar No. 210709)
LAW OFFICE OF JOSEPH R. BECERRA
835 Wilshire Boulevard, Suite 200
Los Angeles, California 90017
Telephone: (213) 542-8501
Facsimile: (213) 542-5556
Email: jbecerra@jrbecerralaw.com

Torey Joseph Favarote (State Bar No.: 198521)
GLEASON & FAVAROTE, LLP
835 Wilshire Blvd., Suite 200
Los Angeles, California 90017
Telephone: (213) 452-0510
Facsimile: (213) 452-0514
tfavarote@gleasonfavarote.com

Attorneys for Plaintiff Portia Daniels,
on behalf of herself and all others similarly situated

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| PORTIA DANIELS, on behalf of herself and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>AÉROPOSTALE WEST, INC., a Delaware corporation, AÉROPOSTALE, INC., a Delaware corporation, and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. CV 12-05755 WHA<br><br>**NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF COLLECTIVE ACTION SETTLEMENT**<br><br>Date: May 29, 2014<br>Time: 8:00 a.m.<br>Judge: Honorable William H. Alsup<br>Courtroom: 8<br>Action Filed: November 9, 2012<br>Trial: June 9, 2014 |

///

///

///

**TABLE OF CONTENTS**

I. INTRODUCTION .....2

II. PROCEDURAL BACKGROUND .....4

III. SUMMARY OF THE SETTLEMENT AGREEMENT .....5

IV. STANDARD FOR APPROVAL .....7

V. THE COURT SHOULD APPROVE THE SETTLEMENT AGREEMENT BECAUSE IT IS A FAIR AND REASONABLE RESOLUTION OF A BONFIDE DISPUTE .....8

A. The Settlement Agreement Resolves A Bona Fide Dispute. .....9

B. The Settlement Agreement Is Fair And Reasonable .....9

C. The Service Payment To Named Plaintiff Portia Daniels And Collective Action Counsel Attorneys' Fees And Costs Requested In This Case Are To Be Determined By The Court At The Final Fairness Hearing .....12

1. Named Plaintiff Portia Daniels Service Payment .....12

2. Collective Action Counsel Attorneys' Fees and Costs .....13

VI. CONCLUSION .....14

# TABLE OF AUTHORITIES

Cases

Almodova v. City and County of Honolulu, 2010 WL 1372298, at *4 .... 8

Bredbenner v. Liberty Travel, Inc., 2011 WL1344745, *22-23 .... 12

Clark v. Ecolab, Inc., 2010 WL 1948198 .... 13

Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 127 (9th Cir. 1992) .... 7

Fegley v. Higgins, 19 F.3d 1126, 1134 (6th Cir.1994) .... 13

Fontes v. Drywood Plus, Inc. (D. Ariz., Dec. 2, 2013, CV-13-1901-PHX-LOA) 2013 WL 6228652 .... 7

Goudie v. Cable Communications, Inc., 2009 WL 88336, at * 1 .... 8

Grove v. ZW Tech, Inc., Civil Action No. 11–2445–KHV, 2012 WL 1789100, at *4 .... 9, 10, 12

Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir.1998) .... 8

In re Janney Montgomery Scott LLC Fin. Consultant Litigation, 2009 WL 2137224, *12 .... 12

Khait v. Whirlpool Corp., No. 06–6381(ALC), 2010 WL 2025106, at *7 .... 9

Khanna v. Inter-Con Sec. Systems, Inc. (E.D. Cal., Sept. 25, 2012, CIV S-09-2214 KJM) 2012 WL 4465558 .... 9, 10, 11, 12

LaParne v. Monex Deposit Co., No. SACV 08–0302 DOC (MLGx), 2010 WL 4916606, at *4 .... 11

Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1354 (11th Cir. 1982) .... 7, 8

McKeen–Chaplin v. Franklin American Mortg. Co., 2012 WL 6629608, at *2 n. 4 (N.D.Cal. Dec.19, 2012) .... 7

Nall v. Mal–Motels, Inc., 723 F.3d 1304, 1307 (11th Cir.2013) .... 8

Petrovic v. Amoco Oil Co., 200 F.3d 1140, 1149 (8th Cir. 1999) .... 7

Schulte, Inc. v. Gangi, 328 U.S. 108, 113 n. 8 (1946) .... 8

Six (6) Mexican Workers v. Arizona Citrus Growers, 904 F.2d 1301, 1308 (9th Cir.1990) .... 11

Stevens v. Safeway, Inc., C/A No. 2:05-cv-01988-MMM-SH, pp. 18-20 .... 12

Wineland v. Casey's General Stores, Inc., 267 F.R.D. 669 (S.D. Iowa 2009).................... 12

Yue Zhou v. Wang's Rest., 2007 WL 2298046, at * 1 ........................................................ 9

Zhou v. Wang's Restaurant (N.D. Cal., Nov. 9, 2006, C050279 PVT) 2006 WL 3258984 .................................................................................................... 13

Statutes

29 CFR § 778.207(b) ............................................................................................ 3

29 CFR § 778.209(a).............................................................................................. 3

29 CFR § 778.209(b) ............................................................................................ 3

29 U.S.C. § 216(b) ............................................................................................... 13

Treatises

4 Newberg on Class Actions § 11.38, at 11-80.............................................................. 12

**NOTICE OF MOTION**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

NOTICE IS HEREBY GIVEN that on May 29, 2014, at 9:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 8 of the Northern District of California, San Francisco Division, located on the 19th Floor of 450 Golden Gate Ave., San Francisco, Plaintiff will and hereby does move this Court for an order: (1) granting preliminary approval to the collective action settlement; (2) directing dissemination of the proposed notice and claim form to collective action members; and (3) setting a schedule for the final approval process.

This motion is based on the accompanying Memorandum of Points and Authorities, the Declaration of Torey Joseph Favarote In Support of Plaintiff's Motion for Preliminary Approval of Collective Action Settlement ("Favarote Decl." or "Favarote Declaration"); Declaration of Joseph R. Becerra In Support of Plaintiff's Motion for Preliminary Approval of Collective Action Settlement ("Becerra Decl." or "Becerra Declaration"); Declaration of Portia Daniels In Support of Plaintiff's Motion for Preliminary Approval of Collective Action Settlement ("Daniels Decl." or "Daniels Declaration"); all other records, pleadings, and papers on file in this action, and on such other evidence or argument as may be presented to the Court at the hearing of this motion.

Defendants Aeropostale, Inc. Aeropostale Inc. and Aeropostale West, Inc. do not oppose this motion.

Dated: April 24, 2014

LAW OFFICE OF JOSEPH R. BECERRA

By: ______________________
Joseph R. Becerra
Attorneys for Plaintiff Portia Daniels and the Collective Action Members

Dated: April 24, 2014

GLEASON & FAVAROTE, LLP

By: /s/ Torey Joseph Favarote
Torey Joseph Favarote
Attorneys for Plaintiff Portia Daniels and the Collective Action Members

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

On April 24, 2013, this Court certified a collective action (members who opted in[1] are hereinafter collectively referred to as the "FLSA Collective Action Members" or "Collective Action Members") against Aeropostale Inc. and Aeropostale West, Inc. (hereinafter collectively referred to as "Defendants") for the failure to pay its employees overtime in accordance with the FLSA by failing to include all forms of compensation into the calculation of their regular pay rate. Defendants operate and, at all times during the relevant liability period (three years prior to the filing of the complaint), have done business as a shopping mall-based specialty retailer of casual apparel and accessories throughout the United States. (Complaint, ¶ 2.) In its endeavor, Defendants employ personnel in California and throughout the United States as non-exempt store employees, which include but is not limited to "Associates," "Assistant Store Managers," "Associate Store Managers," "Store Managers" and "General Managers" ("Non-Exempt Store Employees"). Id. This lawsuit challenges Defendants' wage and hour practices as they concern Non-Exempt Store Employees. (Complaint, ¶ 3.) These employees that were classified as non-exempt, were: (i) paid an hourly rate for their first forty (40) hours of work in a workweek; (ii) were eligible for, and paid, some overtime for hours worked over 40 in a workweek; and (iii) were eligible for monthly and annual non-discretionary bonuses that varied in amount and were dependent on these employees' work performance at the store in which they were employed. Id. The non-discretionary bonuses noted above were earned for sales goals reached by Non-Exempt Store Employees, for limiting "shrinkage" (loss of inventory due to theft or accident), for staying employed with the company, and for recruiting employees and other personnel. Id. These bonuses included but were not limited to "sales," "shrink," "contest," "sign-on," "referral," and "retention."

The crux of Plaintiff's complaint is that Defendants had a uniform, nationwide practice of failing to include these earned bonus amounts into Non-Exempt Store Employees' regular rate of

---

[1] The certified collective action consists of the same individuals as in the settled action.

pay for overtime purposes in violation of the FLSA. (Complaint, ¶ 4.) *See* 29 CFR § 778.209(a) (Where a nonexempt employee earns a bonus and works overtime, the overtime calculation requires the bonus to be apportioned back to the hours worked during the workweek(s) when the bonus was earned); *see also* 29 CFR § 778.209(b) (Where bonuses cannot be apportioned to particular workweeks in which they were earned, they must be apportioned on an average basis to the total period of weeks in which they were earned to yield an average weekly bonus); *see also* 29 CFR § 778.207(b) (2000).

Defendants have asserted defenses to the claims alleged in the Collective Action and expressly deny each of the claims asserted against them and any and all liability arising out of the conduct alleged in the Collective Action. (Joint Stipulation of Collective Action Settlement, hereinafter "Stip.," ¶ 8, attached herein as Exhibit A to Declaration of Torey Joseph Favarote in Support of Motion for Preliminary Approval of Collective Action Settlement, hereinafter "Favarote Decl.", ¶ 3.) Defendants contend, among other things, that they have complied at all times with the Fair Labor Standards Act and all applicable state wage-and-hour laws, and that they paid the Representative Plaintiff and Collective Action Members all wages and other payments owing to them under federal law. Id. Defendants contend, specifically, that at all times from November 9, 2009 to the present, it has been their policy and practice to pay all overtime owed to the Representative Plaintiff and Collective Action Members, including paying overtime adjustments each time Representative Plaintiff or a Collective Action Member earned a non-discretionary sales, shrink, or contest bonus and worked overtime in the applicable pay period. Id. Defendants also contend that any instances in which they failed to pay such overtime adjustments were inadvertent, isolated, and the product of human error. Id. Defendants contend that referral bonuses are discretionary because participation is strictly voluntary, recruitment efforts do not involve significant time, and the activity is limited to after-hours solicitation done only among friends, relatives, neighbors and acquaintances as part of the employees' social affairs, in accordance with the Department of Labor's compliance sheet. Id. Defendants further contend that retention bonuses qualify as discretionary because they are awarded at the discretion of Defendants. Id.

Defendants also contend that any recovery in this action to which the Representative Plaintiff or Collective Action Members might be entitled to is barred, in whole or in part, by "true up" payments previously made to certain Collective Action Members which could account for some or all of the underpayment of overtime compensation alleged in the Complaint. Defendants further contend that Plaintiff's claims are subject to a two-year statute of limitations because Defendants' policies and practices were at all times compliant with the FLSA, and any violations were not willful. Id. For the same reasons, Defendants further contend that Representative Plaintiff and Collective Action Members are not entitled to liquidated damages. Id. Lastly, Defendants contend that several Collective Action Members are ineligible to receive any recovery in this action because they submitted their Consent to Join forms after the applicable deadline. Id.

Plaintiff believes that Defendants' violations of the FLSA are clear and will prevail at trial, if necessary. Defendants adamantly believe in the validity and strength of their position as well. However, both parties, in an effort to avoid the protracted and expensive process of further litigation, desire to settle the Collective Action with the settlement agreement being presented to this Court for preliminary approval.

## II. PROCEDURAL BACKGROUND

On November 9, 2012, Plaintiff filed a Collective Action complaint against Defendants alleging, *inter alia*, that Defendants' violated the FLSA by failing to correctly calculate and pay overtime to its Non-Exempt Store Employees. (*See* Complaint.) The FLSA Collective Action Members are defined by the Complaint as "[a]ll current and former employees of Defendants classified as non-exempt, who have worked overtime for Defendants in the United States or Puerto Rico at any time within the Collective Action Period and received a non-discretionary bonus." (Complaint, ¶ 20.) Certification was granted by this Court on April 24, 2013. (Favarote Decl., ¶ 3.) Both Parties served and responded to discovery and Plaintiff took the deposition of Defendants' Person Most Qualified in four categories related to Plaintiff's claims, Rawle Boatswain. (Favarote Decl., ¶ 5.) Collective Action Counsel analyzed thousands of pages of documents in connection to this matter and engaged in a rigorous meet-and-confer process with Defendants to obtain

supplemental discovery regarding, among other things, the payroll records of all the Collection Action Members. Id. On February 12, 2014, the Parties participated in a Settlement Conference before United States Magistrate Judge Jacqueline Scott Corley where the Parties reached a settlement, now subject to this Court's approval. (Favarote Decl., ¶ 3.)

## III. SUMMARY OF THE SETTLEMENT AGREEMENT

For purposes of settlement, the Parties have agreed that the Collective Action Members certified for this action are all current and former employees of Defendants from the United States or Puerto Rico that opted into this action, were classified as non-exempt, worked overtime, and received a non-discretionary bonus at any time between November 9, 2009 and the date of preliminary approval of the Collective Action Settlement. (Favarote Decl., ¶ 3.)

Under the proposed settlement, the Collective Action Members (totaling approximately 594 former and current employees) will receive 100% of the amount that each Collective Action Member is owed due to the alleged failure to include sales, shrink, contest, retention, referral, Puerto Rico Christmas Bonus, or a gross up payment ("non-discretionary bonuses") into their regular rate of pay. (Favarote Decl., ¶ 3; Stip., ¶¶ 11, 28.) This includes the Representative Plaintiff, Portia Daniels as well. This payment will be for the period of November 9, 2009 to the date of preliminary approval of this settlement. (Favarote Decl., ¶ 3; Stip., ¶ 28.) As such, the Defendants agree as part of the settlement to a three year statute of limitations instead of two years. (Favarote Decl., ¶ 6, Stip., ¶ 28.) Defendants also agree, as a result of this settlement that within 30 days of the Court signing the order granting Final Approval and Final Judgment, going forward, Defendants will include retention and referral bonuses into the regular rate of pay for purposes of calculating overtime compensation for all of its non-exempt employees in the United States and Puerto Rico. (Favarote Decl., ¶ 6, Stip., ¶ 39.) Defendants will also pay the employer's portion of federal and state income taxes from the settlement amounts. (Favarote Decl., ¶ 6, Stip., ¶ 28f.) Defendants will also bear all costs of administrating the settlement as incurred by the Claims Administrator, who the

/ / /

/ / /

parties have determined to be Simpluris, Inc.[2] (Favarote Decl., ¶ 6.) Additionally, Defendant will pay the Representative Plaintiff an incentive payment, up to $5,000 as well as the reasonable fees and costs of the Collective Action Counsel, all as determined by the Court. (Favarote Decl., ¶ 6, Stip., ¶ 26b, 28b,e.) Thus, none of the costs and fees for this settlement will be paid by the Collective Action Members but by Defendants alone. (Favarote Decl., ¶ 6, Stip., ¶ 28a-f.) It is estimated that the amount of unpaid wages due to each Collective Action Members ranges from $0.00 for those that were paid all overtime wages due, to up to $588.00 in unpaid overtime. (Favarote Decl., ¶ 6.)

Collective Action Members, with the exception of Representative Plaintiff, will be deemed to have released and forever discharged Defendants, past or present subsidiaries, divisions, parents, and successors or assigns of Defendants, and past or present officers, directors, shareholders, partners, agents, employees, advisors, insurers, attorneys, representatives, trustees, heirs, executors, administrators, and predecessors or successors or assigns ("Released Parties") from the FLSA claims alleged in this action based on the facts alleged. (Favarote Decl., ¶ 6, Stip., ¶ 14a, b.) As such, the release of claims is not over broad. Additionally, the claims to be released through the settlement and the claims set out in the complaint are the same. (Favarote Decl. ¶ 3.)

Notice of the settlement provides a basic explanation of the claims alleged against the Defendants as well as of the release each Collective Action Member who opts in consents to in the case. (Favarote Decl., ¶ 9, Exh B.) The notice also informs the Collective Action Members that a copy of the settlement agreement is available to them through Collective Action Counsel and will be available for download on its website and provides Collective Action Counsel's contact information. Id. Instructions on how to access the court docket via Pacer or in person at any of the court's locations are also included in the notice. Id. The notice will state the date of final approval hearing and that the date is subject to change. Id. Additionally, it provides instruction to the Collective

---

[2] Parties believe that the estimated $15,000 cost of the Claims Administrator are reasonable in relation to the value of the settlement, especially because this amount will be paid separately from the settlement by the Defendants.

Action Members to check the website or Pacer for changes. Id. The notice further provides Collective Action Members 45 days from the date of mailing the notice to return an accompanying form for their objections to the settlement. Id. The notice will also include directions for which Collective Action Members can exclude themselves from the settlement, which must also be completed within 45 days of the mailing of the notice. Id. The notice also advises the Collective Action Members that they should check the settlement website to confirm that the date has not been changed. Id. The notice also provides simple instructions to Collective Action Members on how to exclude themselves from the settlement, by sending a letter only to the Claims/Settlement Administrator. Id. Should Collective Action Members choose to object to the settlement, instructions are included in the notice to send their objections only to the Court. Id.

The Class Action Fairness Act ("CAFA") does not apply in this case, and thus CAFA Notice need not be given.

## IV. STANDARD FOR APPROVAL

It is well-established that judicial policy strongly favors settlements, particularly where complex, multi-party litigation is concerned, as significant resources can be conserved by avoiding the time, costs, and rigor of prolonged litigation. Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 127 (9th Cir. 1992); *see* Petrovic v. Amoco Oil Co., 200 F.3d 1140, 1149 (8th Cir. 1999) ("A strong public policy favors [settlement] agreements, and courts should approach them with a presumption in their favor."). This holds true for the resolution of FLSA collective actions as well. Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1354 (11th Cir. 1982) ("we allow the district court to approve the [FLSA] settlement in order to promote the policy of encouraging settlement of litigation.")

The 9th circuit as well as other circuits follow the standards set forth in the 11th circuit decision Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350 (11th Cir.1982) for guidance in the courts' approval of FLSA settlement agreements. *See* McKeen–Chaplin v. Franklin American Mortg. Co., 2012 WL 6629608, at *2 n. 4 (N.D.Cal. Dec.19, 2012); *see also* Fontes v. Drywood Plus, Inc. (D. Ariz., Dec. 2, 2013, CV-13-1901-PHX-LOA) 2013 WL 6228652. (Quoting Nall v.

Mal–Motels, Inc., 723 F.3d 1304, 1307 (11th Cir.2013) ("Still, we believe that the rule of Lynn's Food applies to [FLSA] settlements between former employees and employers.")).

The proper procedure for obtaining court approval of the settlement of FLSA claims is for the parties to present to the court a proposed settlement, upon which the district court may enter a stipulated judgment only after scrutinizing the settlement for fairness. *See* Lynn's Food Stores, Inc., 679 F.2d at 1353; *see also* Schulte, Inc. v. Gangi, 328 U.S. 108, 113 n. 8 (1946); and House Report No. 101-664. In reviewing the fairness of such a settlement, a court must determine whether the settlement is a fair and reasonable resolution of a *bona fide* dispute. *See*, Lynn's Food Stores, Inc., 679 F.2d at 1355. "If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute [,] ... the district court [may] approve the settlement in order to promote the policy of encouraging settlement of litigation." Id. at 1355.

Courts have not agreed upon one set of factors to use in evaluating a proposed FLSA settlement. Almodova v. City and County of Honolulu, 2010 WL 1372298, at *4 (D.Haw. March 31, 2010). Several courts have applied the factors for approval of class action settlements by analogy. Id. The factors courts balance in evaluating a proposed class action settlement for overall fairness include the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; [omitted as irrelevant to a FLSA action]; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; [omitted as irrelevant to a FLSA action]. Id. (quoting Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir.1998) (citations omitted)).

## V. THE COURT SHOULD APPROVE THE SETTLEMENT AGREEMENT BECAUSE IT IS A FAIR AND REASONABLE RESOLUTION OF A BONFIDE DISPUTE.

In reviewing a private FLSA settlement, the district court's "[o]bligation is not to act as caretaker but as gatekeeper; it must ensure that private FLSA settlements are appropriate given the FLSA's purposes and that such settlements do not undermine the Act's purposes." Goudie v. Cable Communications, Inc., 2009 WL 88336, at * 1 (D.Or. Jan.12, 2009). "Thus, [i]n reviewing the

fairness of such a settlement, a court must determine whether the settlement is a fair and reasonable resolution of a bona fide dispute." Id. (quoting Yue Zhou v. Wang's Rest., 2007 WL 2298046, at * 1 (N.D.Cal. Aug.8, 2007)).

**A. The Settlement Agreement Resolves A Bona Fide Dispute.**

To show that there is a bona fide dispute, the parties must provide sufficient information about the following subjects: (a) the nature of the dispute; (b) the employer's business and the work performed by the employees; (c) the employer's reasons for disputing the right to overtime; (4) the employees' justification for the disputed wage; and (5) the parties' estimates of the number of hours worked and the applicable wage if the parties dispute the computation. Khanna v. Inter-Con Sec. Systems, Inc. (E.D. Cal., Sept. 25, 2012, CIV S-09-2214 KJM) 2012 WL 4465558 (citing Grove v. ZW Tech, Inc., Civil Action No. 11–2445–KHV, 2012 WL 1789100, at *4 (D.Kan. May 7, 2012).

The settlement in this case is a resolution of a bona fide dispute. Defendants conduct business as a casual clothing retail store located in malls across the United States. Plaintiff brought this case alleging that Defendants failed to include all non-discretionary bonuses into Non-Exempt Store Employees' regular rate of pay, thus violating the FLSA's overtime provisions. (Complaint, ¶¶ 3, 4.) Defendants argue that they paid Non-Exempt Employees overtime adjustments in the applicable time period and that any failure to pay was inadvertent and isolated, not willful. (Stip., ¶8.) Defendants also dispute the nature of referral and retention bonuses, characterizing them as discretionary and thus not being required to be included in the calculation of the regular rate of pay. Id. Plaintiff maintains that the bonuses were performance-based job requirements and non-discretionary and thus must be included in employees' regular rate of pay. (Complaint, ¶¶ 3, 4.) Both Plaintiff and Defendants remain committed to their respective positions and theories in this bona fide dispute.

**B. The Settlement Agreement Is Fair And Reasonable.**

In determining whether the FLSA settlement is reasonable, the court should consider whether "the proposed settlement reflects a reasonable compromise over contested issues." Khait v. Whirlpool Corp., No. 06–6381(ALC), 2010 WL 2025106, at *7 (E.D.N.Y. Jan.20, 2010). The

factors relevant to this determination include the course of the negotiations, the existence of any factual or legal questions that place the outcome of the litigation in doubt, the benefits of immediate recovery balanced against litigation, and the parties' belief the settlement is fair. Khanna v. Inter-Con Sec. Systems, Inc. (E.D. Cal., Sept. 25, 2012, CIV S-09-2214 KJM) 2012 WL 4465558 (citing Grove v. ZW Tech, Inc., Civil Action No. 11–2445–KHV, 2012 WL 1789100, at *5 (D.Kan. May 7, 2012)).

While there has not been any governmental participant in the investigation of this case, through Collective Action Counsel's investigation and experience, Defendants pay policies and practices violate FLSA standards. However, since Plaintiffs filed the complaint in November 2012, Defendants have resisted admission of any liability, asserting affirmative defenses and opposing certification of the collective action. Defendants insist that it abided by FLSA regulations at all times, and that any underpayments that occurred were individualized incidences that were the result of human error. (Stip., ¶ 8.) While Plaintiff firmly believes it will prevail at trial, some doubt in the outcome of litigation is cast by Defendants' factual and legal claims. (Favarote Decl., ¶ 4.) Defendants' factual claim that it made systematic and regular overtime adjustments for non-discretionary bonuses place the Plaintiff's ability to show Defendants' willfulness at issue, and as a result, puts at some degree of risk on Plaintiff's ability to recover liquidated damages for the Collective Action Members or to establish that a 3 year statute of limitations should be used instead of 2 years. (Stip., ¶ 8.) Additionally, Defendants' legal claim that retention and referral bonuses are discretionary may be decided at trial differently than Plaintiff expects. Id. Collective Action Counsel believe the settlement significantly resolves these uncertainties of the litigation's outcome in favor of the Collective Action Members by paying them **100%** of the unpaid overtime due to the Defendants' failure to include the non-discretionary bonuses at issue into the calculation of their regular rate of pay for a 3 year statute of limitations period. (Favarote Decl., ¶ 6; Declaration of Joseph R. Becerra in Support of Motion for Preliminary Approval of Collective Action Settlement, "Becerra Decl.", ¶ 4.) Additionally, although Defendants deny liability and specifically deny that retention and referral bonuses are discretionary, as a part of the settlement, Defendants agree that

retention and referral bonuses will be included into the regular rate of pay for the purposes of calculating overtime compensation for all of its non-exempt employees in the United States and Puerto Rico going forward.[3] (Favarote Decl., ¶ 6; Settlement Agreement, ¶ 39.) This is a great benefit to all of Defendants' non-exempt employees nation-wide and not just those that opted into the case. (Favarote Decl., ¶ 6.) Furthermore, the settlement is non-reversionary, in accordance with 9th circuit case law (favoring non-reversionary settlements as fulfilling the FLSA purpose in deterring employers from continuing to violate the FLSA) as all unclaimed funds will be donated to Public Justice of Oakland, California, a public interest law firm that litigates, amongst other actions, actions against unjust employers. (Stip., ¶ 28d.) *See* Khanna v. Inter-Con Sec. Systems, Inc. (E.D. Cal., Sept. 25, 2012, CIV S-09-2214 KJM) 2012 WL 4465558, at *11; Six (6) Mexican Workers v. Arizona Citrus Growers, 904 F.2d 1301, 1308 (9th Cir.1990); LaParne v. Monex Deposit Co., No. SACV 08–0302 DOC (MLGx), 2010 WL 4916606, at *4 (C.D.Cal. Nov. 29, 2010). Notably, the settlement puts 100% of each of 594 Collective Action Members' overtime payment owed for an over-four year period back in his/her hands presently, as opposed to an undeterminable amount in an indeterminable future should the parties continue to trial. Defendants' "true-up" payment to the Collective Action Members in aggregate is estimated to be at least $8,200.00. (Stip., ¶ 2u.)

Collective Action Counsel are highly experienced employment attorneys who have significant experience in complex litigation. They are familiar with the facts and law in the case, and have negotiated many similar class action settlements before. (Favarote Decl., ¶¶ 4, 11; Becerra Decl., ¶¶ 2-3.) Based upon Collective Action Counsel's discovery and investigation and taking into account the sharply contested legal issues involved, the expense and time necessary to prosecute the Collective Action through trial, the risks, uncertainty and costs of further prosecution, the uncertainties of complex litigation and the relative benefits conferred upon the Settlement Collective Action Members pursuant to this Settlement Agreement, Collective Action Counsel has concluded that a settlement with Defendants on the terms set forth in this Settlement Agreement is fair,

---

[3] Defendants agree to make this change within 30 days after entry of the Order of Final Approval and Final Judgment.

reasonable, adequate and in the best interests of Representative Plaintiff and the Collective Action Members. (Favarote Decl., ¶ 4; Becerra Decl., ¶ 4.)

As the foregoing illustrates, the Parties are at odds in this case about Defendants' liability under the FLSA, and this settlement agreement ends the bona fide dispute fairly and reasonably, avoiding further, costly litigation.

**C. The Service Payment To Named Plaintiff Portia Daniels And Collective Action Counsel Attorneys' Fees And Costs Requested In This Case Are To Be Determined By The Court At The Final Fairness Hearing.**

As part of the inquiry to determine whether a FLSA settlement is fair, a district "[c]ourt must consider the proposed service payments to the named plaintiff and the attorney's fees." Khanna v. Inter–Con Sec. Systems, Inc., 2012 WL 4465558, at * 10 (E.D.Cal. Sept.25, 2012) (citing Grove v. ZW Tech, Inc., 2012 WL 1789100, at *7 (D.Kan. May 7, 2012)). "Among the factors relevant to this determination are the course of the negotiations, the existence of any factual or legal questions that place the outcome of the litigation in doubt, the benefits of immediate recovery balanced against litigation, and the parties' belief the settlement is fair." Id. at 11 (citing Grove, 2012 WL 1789100, at *5).

**1. Named Plaintiff Portia Daniels Service Payment.**

Courts around the country have approved substantial service/incentive payments in FLSA collective actions and other employment-related class actions. *See*, e.g., Stevens v. Safeway, Inc., C/A No. 2:05-cv-01988-MMM-SH, pp. 18-20 (C.D. Cal. Feb. 25, 2008) (awarding incentive payments of $20,000 and $10,000 each to named Plaintiffs); In re Janney Montgomery Scott LLC Fin. Consultant Litigation, 2009 WL 2137224, *12 (E.D. Pa. Jul. 16, 2009) (granting incentive payments of $20,000 to each of three named Plaintiffs); Bredbenner v. Liberty Travel, Inc., 2011 WL1344745, *22-23 (D.N.J. Apr. 8, 2011) (awarding $10,000 to eight named plaintiffs; citing a 2006 study referenced in 4 Newberg on Class Actions § 11.38, at 11-80, that showed average incentive award to class representatives to be $16,000); Wineland v. Casey's General Stores, Inc., 267 F.R.D. 669 (S.D. Iowa 2009) (approving incentive payments of $10,000 per named plaintiff and $1,000 for each deponent in FLSA case on behalf of over 11,000 cooks and cashiers employed by

convenience store chain); Clark v. Ecolab, Inc., 2010 WL 1948198 (S.D.N.Y. May 11, 2010) (approving $10,000 service awards to 7 named plaintiffs in hybrid class/collective action involving unpaid overtime).

In this case, Plaintiff request the court grant her an incentive award of $5,000, to be *paid by Defendants separately from the Collective Action Members' settlement*, for the work she spent on behalf and to the benefit of the Collective Action Members. Ms. Daniels filed this case and supplied Collective Action Counsel with documents and information to evaluate the case. She was instrumental in aiding the prosecution of the case, as she helped Collective Action Counsel better understand the facts underlying the parties' claims and defenses. (Favarote Decl., ¶ 8; Declaration of Portia Daniels in Support of Motion for Preliminary Approval of Collective Action Settlement, hereinafter "Daniels Decl.", ¶ 3.) She also spent hours reviewing and responding to written discovery and evaluating the information that Defendants provided in discovery. (Daniels Decl., ¶3.) Ms. Daniels also took time off from her job without pay to attend the Settlement Conference. (Daniels Decl., ¶ 2.) She also assumed substantial risk in filing this action in being "blacklisted" from other jobs in the retail industry for being the named plaintiff in a wage and hour collective action. (Daniels Decl., ¶ 3.) Undoubtedly, the other Collective Action Members have greatly benefitted from Ms. Daniels' efforts. (Favarote Decl., ¶ 8.) Without the efforts of Ms. Daniels who aided Collective Action Counsel's ability to understand and prosecute the case, this settlement could not have been achieved.

**2. Collective Action Counsel Attorneys' Fees and Costs.**

Settlement of FLSA overtime claims must include an award of reasonable attorneys' fees by the court. Zhou v. Wang's Restaurant (N.D. Cal., Nov. 9, 2006, C050279 PVT) 2006 WL 3258984. *See* 29 U.S.C. § 216(b) ("The court in such action *shall,* in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action"); *see also* Fegley v. Higgins, 19 F.3d 1126, 1134 (6th Cir.1994) (noting that under FLSA an award of reasonable fees is mandatory).

/ / /

While Collective Action Counsel will file a separate motion for attorneys' fees and costs to be heard at the time the Court decides whether to grant Final Approval of the Settlement, it should be noted that none of such costs will be paid out of the Collective Action Members' recovery, but instead will be paid separately by Defendants. The motion will be filed no later than 14 days before the deadline for objection to the settlement.

## VI. CONCLUSION

For the reasons set forth above, the Court should grant Plaintiff's Motion for Preliminary Approval of Collective Action Settlement.

Dated: April 24, 2014

LAW OFFICE OF JOSEPH R. BECERRA

By: ______________________
Joseph R. Becerra
Attorneys for Plaintiff Portia Daniels and the Collective Action Members

Dated: April 24, 2014

GLEASON & FAVAROTE, LLP

By: /s/ Torey Joseph Favarote
Torey Joseph Favarote
Attorneys for Plaintiff Portia Daniels and the Collective Action Members

**PROOF OF SERVICE**

I, Torey Joseph Favarote, declare:

I am and was at the time of the service mentioned in this declaration, employed in the County of Los Angeles, California. I am over the age of 18 years and not a party to the within action. My business address is Gleason & Favarote, LLP, 835 Wilshire Blvd., Suite 200, Los Angeles, CA 90017.

On April 24, 2014, I served a copy(ies) of the following document(s):

**NOTICE OF MOTION AND PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF COLLECTIVE ACTION SETTLEMENT**

on the parties to this action by placing them in a sealed envelope(s) addressed as follows:

| Attorney | Party(ies) Served | Method of Service |
|---|---|---|
| Stacey McKee Knight<br>Rachel C. Schumacher<br>KATTEN MUCHIN ROSENMAN LLP<br>2029 Century Park East, Ste. 2600<br>Los Angeles, CA 90067-3012<br>Fax: (310) 788-4471 | Counsel for Defendant | CM/ECF |

☐ [BY MAIL] I placed the sealed envelope(s) for collection and mailing by following the ordinary business practice of Gleason & Favarote, LLP, Los Angeles, California. I am readily familiar with Gleason & Favarote, LLP's practice for collecting and processing of correspondence for mailing with the United States Postal Service, said practice being that, in the ordinary course of business, correspondence with postage fully prepaid is deposited with the United States Postal Service the same day as it is placed for collection.

☐ [BY OVERNIGHT COURIER] I caused the sealed envelope(s) to be delivered by a commercial courier service for overnight delivery to the offices of the addressee(s).

☐ [BY HAND] I directed the sealed envelope(s) to the party(ies) so designated on the service list to be delivered by courier this date.

☐ [BY FACSIMILE TRANSMISSION] I caused said document to be sent by facsimile transmission to the fax number indicated for the party(ies) listed above.

☐ [BY ELECTRONIC TRANSMISSION] I caused said document to be sent by electronic transmission to the e-mail address indicated for the party(ies) listed above.

☒ [BY CM/ECF SYSTEM] I caused the above-referenced document(s) to be sent by electronic transmittal to the Clerk's Office using the CM/ECF System for filing which generated a Notice of Electronic Filing to the CM/ECF registrants in this case.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct, and that this declaration was executed on April 24, 2014, at Los Angeles, California.

/s/ Torey Joseph Favarote
Torey Joseph Favarote